The Honorable Ricardo S. Martinez

# UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF WASHINGTON
# AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>LYNN MANLEY CARGILE,<br><br>　　　　　Defendant. | NO. CR21-5290 RSM<br><br>GOVERNMENT SENTENCING MEMORANDUM |

Over two years ago, Defendant Lynn Manley Cargile was involved in a domestic dispute resulting in a multi-hour incident with law enforcement. Following his arrest, investigators found Cargile's firearms, that he could not legally possess, including a short-barreled rifle and a .22 caliber rifle emblazoned with a swastika. Cargile now comes before this Court for sentencing, having pled guilty to Felon in Possession of Firearms, in violation of Title 18, United States Code, Sections 922(g)(1) and 924(a)(2). The government request that this Court impose a sentence of 24 months' imprisonment followed by three years' supervised release.

//

//

Government's Sentencing Memorandum - 1
*United State v. Cargile* CR21-5290 RSM

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WA 98101
(206) 553-7970

## I. Nature and Circumstances of the Offense

Relevant facts are detailed in the complaint (Dkt. No. 1), plea agreement[1] (Dkt No. 34) and the PSR. The Government supplements those accounts here.

In late December 2019, Lynn Cargile's ex-wife called 911 and reported that Cargile had shoved her and broken her phone, leading both she and Cargile's mother to leave the house. As officers from the Battleground Police Department responded, Mandy informed them that Cargile not only had access to firearms, but had also been in possession of firearms in recent days. For several hours, officers unsuccessfully attempted to contact Cargile inside the house. Officers were ultimately required to use flash bang devices to force him to emerge.

While searching the residence, officers found a Smith & Wesson AR .22 caliber rifle, a Black Rain Ordnance short-barreled assault rifle, and two silencers. All four firearms belonged to Cargile. Symbols associated with white supremacist views appear on both the Smith & Wesson and one of the silencers:



---

[1] Dkt. 34 ¶ 9.

Government's Sentencing Memorandum - 2
*United State v. Cargile* CR21-5290 RSM

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WA 98101
(206) 553-7970



When questioned by officers, Cargile denied any wrongdoing. Officers noted Cargile appeared heavily under the influence of drugs and needed to be prodded awake several times during the interview. After observing additional indicia of white supremacist views in Cargile's bedroom, officers re-contacted Cargile and asked him about the AR rifle with the swastika, at which point, Cargile admitted, "all of the swastikas belong to me."

Following Cargile's arrest, Clark County Superior Court charged him with several domestic violence related felonies. While in the Clark County Jail, Cargile made multiple recorded phone calls. During one call with his mother, Cargile asked her to contact his ex-wife to convince her to drop the charges. Cargile also spoke to an ex-girlfriend, who had purchased the short-barreled rifle for him. Cargile told his ex-girlfriend to "come home and fucking tell them that you forgot a gun in my room and I didn't know about it." In separate phone calls with his mother, Cargile told her she needed to "get a hold of that attorney and claim your AR-15." Cargile's mother responded, "I, I don't even know … I had no idea they were under my bed … There was nothing supposed to be under my bed, or any bed, you know?"

## II.   The Advisory Guidelines Range

The parties agreed in the plea agreement that the base offense level of Cargile's offense is 18, pursuant to USSG § 2K2.1(a)(5), because he possessed a firearm described in 26 U.S.C. § 5845(a). Dkt. 34 ¶ 9. The parties also agreed that the 2-level increase for possessing between 3 and 7 dangerous weapons applies, pursuant to USSG §

Government's Sentencing Memorandum - 3
*United State v. Cargile* CR21-5290 RSM

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WA 98101
(206) 553-7970

2K2.1(b)(1). Based on the above calculation, and with a full 3-level reduction for acceptance of responsibility under USSG § 3E1.1, Cargile's total offense level would be 17. At criminal history category VI, the resulting advisory Guidelines range would be 51-63 months' imprisonment.

The U.S. Probation Office calculated Cargile's base offense level as 20 (rather than 18) on the ground that Cargile was also a prohibited person at the time he committed the offense, such that the provision of USSG § 2K2.1(a)(4) applies. With the same 2-level increase for possessing four firearms, and a 3-level decrease for acceptance of responsibility, the Probation Office calculates his total offense level as 19. The resulting advisory Guidelines range as calculated by the Probation Office is 63 to 78 months.

### III.  Sentencing Factors

All sentencing proceedings must begin by determining the applicable Guidelines range—the starting point and initial benchmark, which must "be kept in mind throughout the process." *United States v. Carty*, 520 F.3d 984, 991 (9th Cir. 2008) (en banc) (citations omitted). After correctly calculating the Guidelines and hearing from the parties, the Court should then consider the 18 U.S.C. § 3553(a) factors. And if the Court determines that a sentence outside the Guidelines is warranted, the Court "must consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance." *Id.* (citation and quotation marks omitted).

The United States' recommendation is driven by both Cargile's history and the concerning and dangerous conduct underlying this charge, to include an hours long stand-off with law enforcement. The firearm offense that brings him before this Court for sentencing exemplifies how his criminal conduct harms the community. Here, the Guidelines and the other § 3553(a) factors support the 24-month sentencing recommendation.

Government's Sentencing Memorandum - 4
*United State v. Cargile* CR21-5290 RSM

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WA 98101
(206) 553-7970

1. *Seriousness of the Offense and Promoting Respect for the Law, Provision of Just Punishment and Deterrence*

Not only is unlawful possession of a firearm a serious offense, but the circumstances surrounding Cargile's arrest are also extremely serious. Law enforcement arrived at Cargile's residence in response to a domestic violence offense. Despite multiple attempts to contact Cargile, a standoff lasting several hours ensued, during which law enforcement saw Cargile look out of the residence. Another officer noted that the blinds in Cargile's mother's room (where the suppressors and AR Rifle with the swastika were ultimately located) were raised several inches during the standoff. Ultimately, SWAT deployed flash bang grenades which forced Cargile to leave the residence. This conduct generated a risk of serious harm—to the officers, to Cargile, or to innocent bystanders.

Cargile's conduct following his arrest was also highly troubling. Investigators monitored Cargile's jail phone calls following his arrest and heard Cargile admit he was a member of the Aryan Front. During multiple calls with his mother, Cargile asked her to contact his girlfriend to convince her to drop the charges. Cargile also spoke to an ex-girlfriend, and told her to, "come home and fucking tell them that you forgot a gun in my room and I didn't know about it."

In March 2020, Cargile called his mother and told her, "It's real fuckin', it's real important though that you get a hold of that attorney and claim your AR-15." His mother responded, "I, I don't even know…I had no idea they were under my bed…There was nothing supposed to be under my bed, or any bed, you know?" Cargile responded, "All I know is they were all your guns."

These attempts to convince others to obstruct justice exacerbate Cargile's underlying criminal conduct. Cargile attempted to convince two separate witnesses to lie to the court to assist him in evading justice. Tampering with witnesses obviously interferes with the proper working order of the criminal justice system.

Government's Sentencing Memorandum - 5
*United State v. Cargile* CR21-5290 RSM

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WA 98101
(206) 553-7970

For over twenty years, Cargile has not been allowed to legally possess a firearm. During that time, Cargile continued to accrue felony convictions, with multiple state courts advising him that he could not legally possess firearms. Cargile's decision to defy court orders and continue possessing firearms—with a full understanding of the consequences for doing so—can at this point only be described as willful disregard for prior court orders and for the law.

"With regard to the concept of deterrence, the Court must consider both the specific deterrence of the defendant before the Court and the deterrence of other people who may be inclined to commit similar crimes." *United States v. Harder*, 144 F. Supp. 3d. 1233, 1240 (D. Or. 2015). Clearly, Cargile's prior periods of incarceration did not deter him from engaging in the instant offense. Given the nature and length of the Cargile's criminal history, there is a need for the Court's sentence to afford adequate deterrence to him specifically.

A 24-month sentence is therefore needed to ensure just punishment and to deter future conduct should Cargile subsequently run afoul of the law.

  2. *Characteristics of Defendant and Protection of the Community*

Cargile is not a first-time offender in any sense of the word. His first conviction for unlawful possession of a firearm is from 1999. For two decades, Cargile has been unlawfully possessing firearms in this district.

Cargile's criminal history also includes numerous episodes of violent conduct. He has multiple assault convictions and multiple convictions for malicious mischief or disorderly conduct, with different named victims. He also has numerous obstruction-related convictions, including for attempting to elude, resisting arrest, and violating a no-contact order. Cargile's willingness to continue to flout the prohibition on his possession of firearms—while attracting the attention of local police by assaulting others and engaging in an hours-long standoff—indicates an unwillingness to change and an aversion to rehabilitation. The community must therefore be protected from an individual who is willing to continuously possess firearms, elude police, and engage in standoffs.

Government's Sentencing Memorandum - 6
*United State v. Cargile* CR21-5290 RSM

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WA 98101
(206) 553-7970

Also, at least at the time of this offense, Cargile was a white supremacist affiliated with the Aryan Front. Though he may disavow any current ties with this group, only time will tell whether Cargile is sincere in his claim. The defendant has been unable to avoid committing crimes while living in the community. A prison sentence is necessary to protect the public from his criminal conduct.

## IV.  CONCLUSION

The defendant's offense—particularly when viewed in light of his criminal history—weighs in favor of a significant period of incarceration. The government requests that the Court impose a sentence of 24 months' imprisonment.

DATED this 18th day of April, 2022.

Respectfully submitted,

NICHOLAS W. BROWN
United States Attorney

*/s/ William Dreher*
Assistant United States Attorney
United States Attorney's Office
700 Stewart Street, Suite 5220
Seattle, WA 98101

Government's Sentencing Memorandum - 7
*United State v. Cargile* CR21-5290 RSM

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WA 98101
(206) 553-7970